FILED

DEC 10 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    NC-18-1078-FBKu |
| RAQUEL MEDINA, | Bk. No.    16-41967 |
| Debtor. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Certificate Trustee on behalf of Bosco Credit II Trust Series 2010-1, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| RAQUEL MEDINA, | |
| Appellee. | |

Argued and Submitted on November 29, 2018
at San Francisco, California

Filed – December 10, 2018

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Chief Bankruptcy Judge, Presiding

---

Appearances:    Kristin A. Zilberstein of The Law Offices of Michelle
Ghidotti argued on behalf of appellant Deutsche Bank
National Trust Company, as Certificate Trustee on behalf
of Bosco Credit II Trust Series 2010-1; Raymond R. Miller
argued on behalf of appellee Raquel Medina.

---

Before: FARIS, BRAND, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Appellant Deutsche Bank National Trust Company, as Certificate
Trustee on behalf of Bosco Credit II Trust Series 2010-1 ("Deutsche Bank"),
held a junior lien on chapter 13[1] debtor Raquel Medina's real property.
Ms. Medina moved the court to avoid Deutsche Bank's junior lien and to
confirm her plan. Deutsche Bank knew of the motions and had information
inconsistent with the factual predicate for the motion to avoid lien, but
decided not to object. Nearly a year later, Deutsche Bank moved for
reconsideration. The bankruptcy court denied the motion for

---

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure.

2

reconsideration because Deutsche Bank had waited too long to seek relief.

On appeal, Deutsche Bank argues that its failure to protest the lien avoidance was excused, because it was seeking information from the senior lienholder and negotiating with Ms. Medina behind the scenes. It contends that the bankruptcy court ignored its newly discovered evidence and improperly recalculated the amount owed under the senior lien.

The bankruptcy court did not abuse its discretion in denying the motion for reconsideration. We AFFIRM.

Ms. Medina requests that we sanction Deutsche Bank for bringing a frivolous appeal. We DENY her request.

## FACTUAL BACKGROUND[2]

### A.  Prepetition events

On or around October 21, 2005, Ms. Medina and her husband executed a promissory note in the principal sum of $414,000. The promissory note was secured by a deed of trust ("First Deed of Trust") encumbering real property in Pittsburg, California (the "Property"). JPMorgan Chase Bank, National Association ("Chase") eventually acquired the First Deed of Trust.

On the same day, Ms. Medina and her husband executed a second

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

promissory note for $103,500. The promissory note was secured by another deed of trust ("Second Deed of Trust") encumbering the Property. In October 2005, Deutsche Bank acquired the Second Deed of Trust.

## B.    Ms. Medina's chapter 13 case

On July 13, 2016, Ms. Medina filed a chapter 13 petition. She listed the Property in her schedules as having a value of $351,000. She identified Chase as a creditor with a $518,000 claim partially secured by the Property; as such, $167,000 of Chase's lien was unsecured. She listed Deutsche Bank as having a $102,512.28 unsecured claim.[3]

Ms. Medina also filed her proposed chapter 13 plan on July 13. Chase initially objected to plan confirmation because the original plan did not provide for treatment of its claim for prepetition arrears. It stated that it was "finalizing its proof of claim for this matter and estimates that its total secured claim is in the approximate amount of $286,161.58 . . . ." It later withdrew its objection after Ms. Medina amended her plan to include Chase's prepetition arrearage.

The operative plan, the seventh amended plan, provided that Ms. Medina would pay $419 monthly for sixty months. Chase held a Class 1 claim for prepetition arrears totaling $12,856.89. The plan reduced the

---

[3] Ms. Medina's amended Schedule D listed Chase's claim as $414,000, of which $63,000 was unsecured. She increased Deutsche Bank's claim to $200,567.53, the entirety of which was unsecured.

value of Deutsche Bank's collateral to zero and treated its claim as wholly unsecured.

Deutsche Bank filed a proof of claim for $198,351.46 based on the Second Deed of Trust.

**C.     The motions to avoid Deutsche Bank's lien**

On July 28, 2016, Ms. Medina filed a motion to value Deutsche Bank's lien at zero and avoid the lien pursuant to §§ 506, 1322, and 1327 ("First Motion to Avoid Lien"). Deutsche Bank knew about the First Motion to Avoid Lien. It also had information suggesting that the amount due under the First Deed of Trust was less than Ms. Medina stated: it had pulled Ms. Medina's credit report in July 2016, which indicated that Chase was owed $277,120. In August 2016, it corresponded with Ms. Medina's counsel to discuss the discrepancy but did not take further action. It later tried to contact Chase to request a payoff quote, but did not receive a timely response. It did not file a response to the First Motion to Avoid Lien.

Ms. Medina sought entry of an order granting the motion by default. The bankruptcy court denied the First Motion to Avoid Lien on September 7, 2016 because Ms. Medina did not present any evidence to support the amount of the First Deed of Trust as of the petition date.

On October 8, 2016, Ms. Medina filed another motion to avoid Deutsche Bank's lien ("Second Motion to Avoid Lien"). She represented that the Property was worth $351,000 (according to www.zillow.com) and

5

that the amount due under Chase's First Deed of Trust was $518,000. Accordingly, she proposed to strip Deutsche Bank's second priority lien from the Property.

In support of her assertion that she owed Chase $518,000, she attached a partially executed copy of a loan modification agreement effective March 1, 2011 that provided:

> B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments. The new principal balance of my Note is $518,727.23 (the "New Principal Balance").
>
> C.    $217,000.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance"), and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance," and this amount is $301,727.23. The Interest Bearing Principal Balance will re-amortize over 480 months.

The loan modification agreement specified that Ms. Medina would "pay in full . . . the Deferred Principal Balance . . . by the earliest of the date [she] sell[s] or transfer[s] an interest in the Property, . . . the date [she] pay[s] the entire Interest Bearing Principal Balance, or the Maturity Date."

Deutsche Bank was served with and knew about the Second Motion

6

to Avoid Lien but again did not respond. On November 14, the bankruptcy court entered an order ("Lien Avoidance Order") avoiding Deutsche Bank's junior lien and providing that "the Lien is valued at zero, Lien holder does not have a secured claim, and the Lien may not be enforced, pursuant to 11 U.S.C. §§ 506, 1322(b)(2) and 1327."

Deutsche Bank also did not oppose confirmation of Ms. Medina's seventh amended plan. After a hearing, the bankruptcy court entered an order ("Plan Confirmation Order") confirming the plan on November 21.

In December 2016, Deutsche Bank received a payoff quote from Chase showing that the amount due under the First Deed of Trust was $286,554.01 with $0.00 in deferred principal.[4] Chase confirmed by e-mail in April 2017 that the amount due was $285,766.35 with no deferred principal due. Deutsche Bank's counsel communicated with Ms. Medina's counsel in an attempt to settle Deutsche Bank's claim, but Ms. Medina maintained that the total amount due to Chase was $518,000. The last e-mail Deutsche Bank's counsel sent to Ms. Medina's counsel was dated April 6, 2017.

## D.    Deutsche Bank's motion for reconsideration

On October 10, 2017, nearly a year after the Lien Avoidance Order and Plan Confirmation Order were entered and over six months since its

---

[4] The record is somewhat unclear, but Deutsche Bank indicated that it received another payoff quote dated February 6, 2017. Only the December 2016 payoff quote is included in the excerpts of record.

last attempt to communicate with Ms. Medina, Deutsche Bank filed a motion ("Motion for Reconsideration") to reconsider the two orders. It sought relief under Civil Rule 60(b)(1), (2), and (6) based on "a mistake of fact concerning the amounts owed on the first position lien secured by the Property[,]" "newly discovered evidence after the avoidance of [Deutsche Bank's] lien that prevents the valuation of its lien and avoidance of its claim[,]" and "the principals [sic] of equity[.]"

Deutsche Bank argued that it "was forced to accept" Ms. Medina's representation of Chase's lien amount because it could not verify otherwise soon enough to file a timely response to the Second Motion to Avoid Lien; Chase did not file a proof of claim and did not timely respond to Deutsche Bank's request for a payoff quote. Rather, it obtained Ms. Medina's credit report in July 2016, which reported that the amount due under the First Deed of Trust was only $277,120. As a part of its exhibits, Deutsche Bank attached various correspondence between its counsel and Ms. Medina's counsel showing that it had raised the issue of the discrepancy concerning the First Deed of Trust in August 2016, while the First Motion to Avoid Lien was pending.

Once it received the payoff quote (after the Lien Avoidance Order and Confirmation Order), Deutsche Bank claimed that it then tried to negotiate with Ms. Medina to undo the Lien Avoidance Order, but to no avail. When Ms. Medina ceased communications in April 2017, Deutsche

8

Bank claimed that it "was forced to file the instant motion to seek reconsideration" in October 2017.

Deutsche Bank argued that, under Civil Rule 60(b)(1), a mistake of fact warranted reconsideration of the Lien Avoidance Order and Plan Confirmation Order. It said that the court mistakenly relied upon the "completely erroneous fact" and "improper assertion" that the First Deed of Trust was $518,000, when it was actually only $285,766; as such, Deutsche Bank's lien was partially secured.

Deutsche Bank contended that the payoff quote and confirmation e-mail that it received from Chase were "newly discovered evidence" under Civil Rule 60(b)(2). It alleged that it received the new information three months after the court confirmed Ms. Medina's plan and could not with reasonable diligence have obtained the information sooner.

Finally, Deutsche Bank argued that the court should grant reconsideration under Civil Rule 60(b)(6) to prevent manifest injustice. It took the position that it had acted diligently and that Ms. Medina should not be able to shirk repayment of the Note "due to these unfortunate events and her general unwillingness to correct the situation . . . ."

In response, Ms. Medina argued that it was unreasonable for Deutsche Bank to stay silent for eleven months and then seek to upend her confirmed plan, which had been proceeding well thus far. She reminded the court that Deutsche Bank did not object to either the First Motion to

9

Avoid Lien or the Second Motion to Avoid Lien. She stated that her counsel had communicated with Deutsche Bank in August 2016 to explain the amount due under the First Deed of Trust.

At the hearing on the Motion for Reconsideration, the bankruptcy court noted that the evidence from Chase regarding the amount due under the First Deed of Trust was conflicting and stated, "I just don't have good evidence here." It said that it wanted a definitive answer from Chase that clarifies the discrepancy in the amount due: "I want something definitive from Chase, not just some sort of a payment demand, but something where somebody says they've reviewed the file, they've looked . . . at the loan modification, and then as of the date, here is what's owed on the loan."

The bankruptcy court held that there was insufficient evidence to establish the amounts owed under the First Deed of Trust. It continued the hearing for three months to February 7, 2018 and required that Deutsche Bank obtain discovery from Chase specifying the exact amount due as of the petition date.

On February 6, Deutsche Bank filed a supplemental brief informing the bankruptcy court that it had unsuccessfully tried to contact Chase. It had not conducted any formal discovery. At the second hearing, Deutsche Bank requested another continuance, and the court continued the hearing to February 21.

On February 8, Chase filed a proof of claim for $286,161.58. The

attachment listed a $0.00 "deferred balance" and included a fully executed copy of the March 2011 loan modification agreement.

At the third hearing on February 21, Deutsche Bank did not have any further information from Chase, and the bankruptcy court declined to continue the hearing again. The court noted that it had granted Deutsche Bank multiple continuances to conduct discovery, but it had failed to do so.

The bankruptcy court rejected Deutsche Bank's contention that reconsideration was warranted for mistake, inadvertence, surprise, or excusable neglect because it "was aware of the discrepancy in the amount owed Chase prior to the second motion to value being filed[,]" yet failed to object or conduct any discovery.

The bankruptcy court also held that there was "no newly discovered evidence that with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b). Again, movant was aware of the discrepancy in the amount owed Chase . . . . [M]ovant simply chose not to object or do any type of formal discovery towards Chase."

It further found that there was no evidence of fraud.

Regarding timing of the Motion for Reconsideration, the court ruled that Deutsche Bank did not act within a reasonable time following the Lien Avoidance Order and instead "chose to sit on its hands."

Finally, it found "no other reason that justifies relief in that the claim filed by Chase on February 8th, 2018 . . . supports the full amount owed as

11

being $518,727.23, based on the [loan modification agreement] which is attached to Part 3 of the Proof of Claim."

The bankruptcy court entered an order denying the Motion for Reconsideration ("Reconsideration Order"). Deutsche Bank timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B), (K), (L). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court abused its discretion in denying the Motion for Reconsideration.

(2) Whether Ms. Medina is entitled to an award of her fees and costs on appeal.

## STANDARD OF REVIEW

We review for abuse of discretion the bankruptcy court's denial of a motion for reconsideration. *See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 561 (9th Cir. 2006).

We apply a two-part test to determine whether the bankruptcy court abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. *Id.* Then, we review the bankruptcy court's factual findings for clear error. *Id.* at 1262.

We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

## DISCUSSION

**A.** **The bankruptcy court did not abuse its discretion in denying the Motion for Reconsideration.**

Despite sitting on its hands for nearly a year, Deutsche Bank sought reconsideration of the Lien Avoidance Order and Confirmation Order under Civil Rule 60(b).[5] On appeal, it argues that the bankruptcy court erred in holding that the Motion for Reconsideration was untimely and did not satisfy Civil Rule 60(b)(2). We discern no error.

**1.** **Deutsche Bank failed to bring the Motion for Reconsideration within a reasonable time.**

Deutsche Bank argues that the Motion for Reconsideration was timely because it did not earlier have the necessary evidence to support

---

[5] The federal rules do not recognize motions for reconsideration. *See Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 539 (9th Cir. BAP 2004). Rather, there are two avenues through which a party may obtain post-judgment relief: (1) a motion to alter or amend judgment under Civil Rule 59, made applicable in bankruptcy by Rule 9023; and (2) a motion for relief from judgment under Civil Rule 60, made applicable in bankruptcy by Rule 9024. If a party seeks reconsideration within fourteen days following the date of entry of the judgment or order, the motion is treated as a motion to alter or amend the judgment under Civil Rule 59(e). *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001). Otherwise, a motion for reconsideration is construed as a motion for relief from judgment under Civil Rule 60(b). *See Negrete v. Bleau (In re Negrete)*, 183 B.R. 195, 197 (9th Cir. BAP 1995).

reconsideration. We reject this argument.

A party must seek relief under Civil Rule 60(b) within a "reasonable time" after the order or judgment has been entered: "A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Civil Rule 60(c)(1).

"What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (citing *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930-31 (5th Cir. 1976); *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067-68 (10th Cir. 1980)); *see In re Johnson*, 564 B.R. 653, 658-59 (E.D. Cal. 2017) (holding that even a motion for reconsideration filed eight days after an order may be untimely, based on the facts of the case). "[R]elief under Rule 60(b) should only be granted where the moving party is able to demonstrate 'that circumstances beyond its control prevented timely action to protect its interests.'" *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 945 (9th Cir. 2007) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)); *see Foley v. Biter*, 793 F.3d 998, 1004 (9th Cir. 2015) ("relief may only be granted where the petitioner has diligently pursued review of his claims"). "Although the

14

timeliness of a Rule 60(b)(6) motion 'depends on the facts of each case,' relief may not be had where 'the party seeking reconsideration has ignored normal legal recourses.'" *See Alpine Land & Reservoir Co.*, 984 F.2d at 1049 (quoting *United States v. Wyle (In re Pac. Far E. Lines, Inc.)*, 889 F.2d 242, 249, 250 (9th Cir. 1989)).

### a. Deutsche Bank has failed to show good reason for delay or its inability to learn of the pertinent grounds for reconsideration earlier.

The bankruptcy court faulted Deutsche Bank for sitting on its hands and failing to take any action within a reasonable time. Deutsche Bank's dilatoriness is evident in three time periods: (1) before the court granted the Second Motion to Avoid Lien, (2) after the court issued the Lien Avoidance Order, and (3) during the continuances of the hearing on the Motion for Reconsideration. Taken as a whole, these multiple instances of Deutsche Bank's failure to act support the bankruptcy court's ruling that the Motion for Reconsideration was untimely and that there was no new evidence that could not reasonably have been discovered earlier.

First, there is no dispute that Deutsche Bank knew about the discrepancy concerning the amount due under the First Deed of Trust in the summer of 2016, before the bankruptcy court decided the Second Motion to Avoid Lien. Deutsche Bank admitted that it had a copy of Ms. Medina's credit report in July 2016 that caused it to question the

15

amount due under the First Deed of Trust and began e-mailing Chase and Ms. Medina's counsel to clarify the issue. Yet it chose to remain silent before the court and not oppose either the Second Motion to Avoid Lien or the plan confirmation that stripped its junior lien.

Second, Deutsche Bank argues that it could not have brought the motion for reconsideration sooner, because it only received Chase's payoff quote and e-mail confirmation after the court had issued the Lien Avoidance Order and Plan Confirmation Order. But these facts actually confirm Deutsche Bank's dilatoriness. Deutsche Bank apparently received a payoff quote from Chase in December 2016 and e-mail confirmation in April 2017. But rather than move for reconsideration at that time, it did nothing until October 2017. It states on appeal that it moved for reconsideration only when it was "confident that a resolution could not be reached." It fails to explain why it seemingly dropped the issue for half a year and did not bring the evidence to the court's attention immediately.

Third, the bankruptcy court granted Deutsche Bank multiple continuances to allow it to procure evidence in support of the Motion for Reconsideration. It specified at the first hearing that it wanted Deutsche Bank to obtain an affidavit or other discovery from Chase explaining the discrepancy in the amount due under Chase's First Deed of Trust, not just a conclusory statement of the amount owed. Deutsche Bank failed to do so during the first three-month continuance, and the court reluctantly granted

16

a second continuance. When Deutsche Bank still had not procured the required evidence by the third hearing, the bankruptcy court declined to continue the hearing again and denied the Motion for Reconsideration. It noted that Deutsche Bank had not conducted any formal discovery and held that it had failed to carry its burden, despite the multiple continuances. We discern no abuse of discretion.

Deutsche Bank also contends that it should not be punished for attempting to resolve the issue with Chase and Ms. Medina through "cordial communication" rather than in court. But the bankruptcy court unequivocally told Deutsche Bank that it wanted a "definitive" statement from Chase, possibly through formal discovery. It was not unreasonably difficult for Deutsche Bank to propound discovery requests or depose a Chase representative to obtain the necessary information. The desire to behave cordially does not excuse a party's failure to take formal steps to compel the production of necessary information in a pending legal case.

In sum, the record amply reflects Deutsche Bank's pattern throughout this litigation of failing to take action within a reasonable time. The bankruptcy court did not err in determining that Deutsche Bank provided no credible reason for delay and that it could have discovered the pertinent information earlier.

### b. Deutsche Bank agrees that Ms. Medina will be prejudiced by a reversal of the Lien Avoidance Order.

Deutsche Bank concedes that Ms. Medina would suffer "significant prejudice" if we reverse the bankruptcy court and would have to "restructure" her plan to provide for payments on the Second Deed of Trust. Nevertheless, it argues that "the prejudice to Appellant is even greater to allow the lien avoidance to stand."

There is no dispute that Ms. Medina would be significantly prejudiced if we reverse the bankruptcy court. She is over two years into her five-year confirmed plan, which otherwise appears to be proceeding smoothly. We decline to force her to modify the plan to accommodate Deutsche Bank's dilatoriness.[6]

Deutsche Bank repeatedly asserts, without offering any citation to the record, that Ms. Medina had the resources to fund a plan that deals with a secured claim in favor of Deutsche Bank. This cannot possibly be true. According to her schedules (which Deutsche Bank does not dispute), Ms. Medina's income consists of social security benefits in the amount of only $1,020 per month. This is only slightly above the federal poverty

---

[6] Although Deutsche Bank does not substantively discuss the interest of finality, we similarly hold that the interest of finality weighs in favor of affirming the Reconsideration Order, given that Ms. Medina has completed over forty percent of her plan. *See Ashford*, 657 F.2d at 1055 ("Because the time for appeal had passed in this case, the interest in finality must be given great weight.").

guideline of $1,011.67.[7] Even including "family support" of $1,500 per month, her total income is only $2,520. Her monthly expenses (including her payments on Chase's First Deed of Trust) total $2,101 and are modest in nature. This leaves her with $419 per month to fund her plan. Deutsche Bank does not argue, and the record does not suggest, that Ms. Medina has any way to increase her income or reduce her expenses.

In order to accommodate Deutsche Bank's junior secured claim, Ms. Medina's plan payments would have to increase substantially. If the Property is not Ms. Medina's residence (as the record suggests), then she would be able to strip down Deutsche Bank's lien to the difference between the Property value and Chase's proof of claim: $64,838.48. *See* §§ 506(a), 1322(b)(2). But repayment of even this reduced amount is likely impossible, given Ms. Medina's limited income. She would have to pay $2,026.20 per month over the remaining thirty-two months of her plan,[8] in addition to

---

[7] The 2018 federal poverty guidelines set out by the Department of Health and Human Services calculate the poverty guideline for a single person at $12,140 per year. *See* U.S. Dep't of Health & Human Servs., U.S. Fed. Poverty Guidelines Used to Determine Fin. Eligibility for Certain Programs, https://aspe.hhs.gov/poverty-guidelines. Alternatively, the U.S. Census Bureau calculates the 2017 poverty threshold at $12,488 per year for a single person. *See* U.S. Census Bureau, Poverty Thresholds, https://www.census.gov/data/tables/time-series/demo/income-poverty/historical-poverty-thresholds.html.

[8] As of November 2018, she has thirty-two months left on her sixty-month chapter 13 plan.

her current plan payments and regular contractual payments on the First Deed of Trust. Combined with her other monthly expenses, this sum is nearly **double** her total gross income and family support.[9] Thus, there is no basis for Deutsche Bank's cavalier assertion that Ms. Medina could successfully propose and consummate a modified plan.

2.  **Deutsche Bank's evidence was not "newly discovered" under Civil Rule 60(b)(2).**

Deutsche Bank argues that the Chase payoff quote and confirmation e-mail were newly discovered evidence under Civil Rule 60(b)(2). (It does not appeal on the basis of Civil Rule 60(b)(1) and (6).) Deutsche Bank's lack of diligence defeats this argument.

Civil Rule 60(b)(2) provides that the court may relieve a party from a final order for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" The Ninth Circuit has stated that:

> Relief from judgment on the basis of newly discovered

---

[9] The situation is even bleaker if the Property is Ms. Medina's residence. She could only retain the Property if she resumed making her regular contractual payments to Deutsche Bank ($935.17 per month) and increased her plan payments by enough to cure her arrears under the Second Deed of Trust in a reasonable time. *See* § 1322(b)(5). Her total arrears as of November 2018 are probably about $127,183.02 (based on a $100,998.26 prepetition arrearage and $935.17 monthly payments for twenty-eight postpetition months). Ms. Medina would have to pay this amount during the remaining thirty-two months of her plan term at $3,974.47 per month. As a result, including her regular payments, she would have to pay approximately $4,909.64 **more** per month.

> evidence is warranted if (1) the moving party can show the
> evidence relied on in fact constitutes "newly discovered
> evidence" within the meaning of Rule 60(b); (2) the moving
> party exercised due diligence to discover this evidence; and
> (3) the newly discovered evidence must be of "such magnitude
> that production of it earlier would have been likely to change
> the disposition of the case."

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003)
(quoting *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.*, 833 F.2d 208,
211 (9th Cir. 1987)).

Deutsche Bank's argument fails under each of these prongs. First,
while Deutsche Bank may have received the payoff quote and confirmation
e-mail after the Lien Avoidance Order, it knew of the discrepancy
beforehand. It admitted that it pulled Ms. Medina's credit report in July
2016 and contacted her counsel about the discrepancy the following month.
It could have brought this evidence to the court but inexplicably neglected
to do so. *See Coastal Transfer Co.*, 833 F.2d at 212 ("Evidence is not 'newly
discovered' . . . if it was in the moving party's possession at the time of trial
or could have been discovered with reasonable diligence."). Deutsche Bank
had enough evidence to oppose the Second Motion to Avoid Lien and plan
confirmation or at least to seek a continuance so it could search for
additional evidence.

Second, as we discussed above, Deutsche Bank did not exercise due
diligence to uncover the evidence concerning the amount due under the

21

First Deed of Trust. It remained silent before the court during the Second Motion to Avoid Lien, plan confirmation, and thereafter for almost a year. It never took any formal steps to compel Chase to produce the relevant information. (We find it particularly telling that Deutsche Bank ignored the bankruptcy court's instruction to conduct discovery when the court twice continued the hearing on the Motion for Reconsideration.) We cannot excuse Deutsche Bank's dilatory approach to this matter.

Third, the purportedly new evidence was not of such great magnitude so as to likely have changed the outcome of the case. The bankruptcy court was skeptical that the payoff quote and confirmation e-mail were accurate representations of the full amount owed to Chase. (No one has bothered to explain what happened to the deferred balance.) We are equally unconvinced that the new evidence, standing alone and uncorroborated by any formal discovery, would have been sufficient to undo the Lien Avoidance Order. Simply stated, even if the court had considered the new evidence earlier, we cannot say that it would have likely changed the disposition of the case.

The bankruptcy court did not abuse its discretion in holding that there was no newly discovered evidence that Deutsche Bank could not reasonably have obtained earlier.

### 3. The bankruptcy court properly considered Chase's payoff quote and its proof of claim.

Deutsche Bank contends that the bankruptcy court should not have continued the hearings and required further evidence, because Chase's payoff quote and its proof of claim were sufficient evidence of the amount due under the First Deed of Trust. It argues that the bankruptcy court "should have considered" the payoff quote and erred when it "refused to consider" the proof of claim.[10] We disagree.

Deutsche Bank misapprehends the bankruptcy court's ruling at the initial hearing on the Motion for Reconsideration. It did not refuse to consider those pieces of evidence; rather, it found that, crediting Deutsche Bank's evidence, there was conflicting evidence presented by Ms. Medina that was also attributable to Chase. However, although Deutsche Bank had not carried its burden, the court allowed Deutsche Bank another opportunity to present a "definitive" statement from Chase, rather than denying the Motion for Reconsideration outright. Deutsche Bank squandered this opportunity.

The bankruptcy court did not err when it directed Deutsche Bank to address its doubts about the accuracy or reliability of the evidence

---

[10] Deutsche Bank sometimes asserts that "under California law, payoff quotes are binding." But the authorities it cites only hold that a payoff quote "can be relied upon." There is a vast gulf between these two concepts.

presented by Deutsche Bank on reconsideration. It properly evaluated the conflicting evidence, found neither completely convincing, and required more information. The bankruptcy court did not err in requiring Deutsche Bank to produce "definitive" evidence from Chase.

### 4. The bankruptcy court did not object to or amend Chase's proof of claim.

Deutsche Bank also argues that, by denying the Motion for Reconsideration, the bankruptcy court objected to and modified Chase's proof of claim sua sponte. We disagree with Deutsche Bank's characterization of the court's ruling.

Deutsche Bank takes the position that the bankruptcy court "noted that the modification attached to the Proof of Claim overrode the amount listed in the Proof of Claim as the total claim[,]" which was "the equivalent to an objection to the total claim amount . . . ." It claims that the court lacked standing to object to or amend a proof of claim and that its objection did not comport with due process.

The bankruptcy court did not object to, amend, or otherwise alter Chase's proof of claim. To date, Chase's proof of claim remains unchanged from its original amount of $286,161.58. Rather, the bankruptcy court merely relied on evidence contained within Chase's proof of claim (the claimed amount and loan modification agreement) in denying the Motion for Reconsideration. The bankruptcy court did not modify Chase's proof of

24

claim or otherwise abuse its discretion.

**B.      Ms. Medina is not entitled to her fees and costs on appeal.**

Ms. Medina requests in her appellate brief that we sanction Deutsche Bank under Rule 8020 for filing a frivolous appeal. Because Ms. Medina failed to comply with the applicable rule, we deny her request.

Rule 8020(a), which is based on Federal Rule of Appellate Procedure 38, provides that, if the Panel "determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." We will not entertain a sanctions request that is not presented in a separate motion. *See Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1154 (9th Cir. 1996) ("A request made in an appellate brief does not satisfy [Federal Rule of Appellate Procedure] 38."); *Kyle v. Dye (In re Kyle)*, 317 B.R. 390, 395 (9th Cir. BAP 2004), *aff'd*, 170 F. App'x 457 (9th Cir. 2006) ("the requests are rejected as not being in 'a separately filed motion' as required by [Rule 8020]").

Ms. Medina did not file a separate motion requesting sanctions, as required by Rule 8020. We therefore DENY her request for fees and costs.

## CONCLUSION

The bankruptcy court did not abuse its discretion. We AFFIRM.